# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**LORETTA ALLEN FARRIS,**          ]
                                   ]
    **Plaintiff,**          ]
                                   ]
**v.**                             ]   **Case No.: 2:23-cv-606-ACA**
                                   ]
**RxBENEFITS, INC.,**              ]
                                   ]
    **Defendant.**          ]

## MEMORANDUM OPINION

Plaintiff Loretta Allen Farris worked for Defendant RxBenefits, Inc. as a supervisor of quality analysis. For several years, she repeatedly sought promotions to different positions. After RxBenefits hired other candidates for those positions, Ms. Farris filed suit, asserting that RxBenefits violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981, by failing to promote her to a strategic pharmacy analyst position in June 2022 ("Counts One and Six"), and that RxBenefits violated § 1981 by failing to promote her to an account manager position in June 2021 ("Count Two"), a manager quality analysis position in July 2021 ("Count Three"), a strategic pharmacy analyst position in September 2021 ("Count Four"), and a process compliance analyst position in September 2021 ("Count Five"). (Doc. 12 at 3, 16, 25, 35, 46, 57).

RxBenefits moves for summary judgment on all claims. (Doc. 35). Ms. Farris concedes that summary judgment is warranted on Counts Four and Five, so the court **WILL GRANT** RxBenefits's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on those counts without further discussion. (*See* doc. 42 at 23 n.1, 41 n.8). The court also **WILL GRANT** RxBenefits's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on all remaining claims.

I.   BACKGROUND

In deciding a motion for summary judgment, the court is "required to view the evidence and all factual inferences therefrom in the light most favorable to [Ms. Farris], and to resolve all reasonable doubts about the facts in her favor." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022) (quotation marks omitted; alterations accepted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

In May 2018, RxBenefits hired Ms. Farris, a black woman, as a quality analyst then promoted her to supervisor of quality analysis one year later. (Doc. 37-1 at 8, 10–11). As a supervisor of quality analysis, Ms. Farris was responsible for training

employees, monitoring their performance, and working with the manager of quality analysis to improve quality testing. (*Id.* at 12). Between 2020 and 2022, Ms. Farris applied for several promotions but was rejected from each one. For example, in September 2020, Ms. Farris applied to be manager of quality analysis, but it was awarded to another individual. (*Id.* at 27–28). In March 2021, she applied for an account manager position. (Doc. 12 ¶ 87; doc. 29 ¶ 87). One account manager position was awarded to Janet Santoro, a Hispanic woman, later that month. (Doc. 37-8 at 33). Several months later, another account manager position was awarded to Tiffany Bruni. (Doc. 37-1 at 19). Ms. Farris concedes, however, that she was not eligible for the position awarded to Ms. Bruni. (*See* doc. 39 at 12–13 ¶ 47; doc. 42 at 11 ¶ 47).

In July 2021, RxBenefits hired Angela Strang, a Caucasian woman, as the manager of a new team meant to merge several others.[1] (Doc. 37-11 at 6, 8, 11). Soon after, a quality analysis manager resigned. (Doc. 37-3 at 9). Based on a conversation Ms. Farris had with another employee, Ms. Farris believed that the quality analysis manager position would be open and that she could apply for it. (Doc. 37-1 at 25). But instead, the vice president of operations decided to eliminate

---

[1] Ms. Strang testified that her team was called benefit design. (Doc. 37-11 at 6). A vice president testified that Ms. Strang's team was called benefit implementation. (Doc. 37-3 at 9). In her response brief, Ms. Farris asserts that Ms. Strang did "only the Quality Manager job." (Doc. 42 at 12 ¶¶ 57–58). But the evidence she cites does not support that assertion. (*See id.*; doc. 37-3 at 10; doc. 37-11 at 10–11, 14).

the quality analysis manager position and merge the quality team—which included Ms. Farris—into Ms. Strang's team. (Doc. 37-3 at 6, 9–10; doc. 37-18 ¶¶ 8–10; *see* doc. 37-1 at 24; doc. 42 at 16 ¶ 5; doc. 45 at 2 ¶ 5). Because Ms. Strang's role absorbed that of quality analysis manager, RxBenefits never posted the quality analysis manager position. (Doc. 37-3 at 10–11).

Ms. Farris and Ms. Strang did not have a good working relationship. (*See, e.g.*, doc. 37-11 at 148). Ms. Strang felt Ms. Farris would do better in "a different role." (Doc. 37-3 at 16). She encouraged Ms. Farris to apply to a strategic pharmacy analyst position, a job that required the employee to do financial analysis. (Doc. 37-1 at 18, 30). In May 2022, Ms. Farris applied to the strategic pharmacy analyst position. (*Id.* at 16). Ms. Strang called one of Ms. Farris's interviewers for that position and advocated for Ms. Farris. (Doc. 37-13 at 12, 16–17).

Ms. Farris was one of the final two candidates for that position. (Doc. 37-12 at 15). But after two rounds of interviews, RxBenefits hired Bill Weir, a Caucasian. (Doc. 12 ¶¶ 117, 649; doc. 29 ¶¶ 117, 649; doc. 37-12 at 15). The decisionmaker noted that she was unsure whether Ms. Farris had a full understanding of the role because Ms. Farris had not asked many questions in her interviews, with which Ms. Farris agreed in her deposition. (Doc. 37-12 at 15, 66; doc. 37-1 at 18; *see* doc. 37-13 at 19–20). Ms. Farris also testified that she had never performed a financial analysis at the time she interviewed for the position. (Doc. 37-1 at 18). By contrast,

4

Mr. Weir had previously served as a financial analyst and often trained newly-hired strategic pharmacy analysts on how financial analysis worked. (Doc. 37-14 at 9).

## II.    DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Ms. Farris brings one Title VII claim and three § 1981 claims for RxBenefits's failure to promote Ms. Farris, because of her race, to five positions for which she applied. (Doc. 12 at 3, 16, 25, 57). Title VII prohibits employers from discriminating against an employee because of that employee's race. 42 U.S.C. § 2000e-2(a). Likewise, § 1981 "prohibits employers from intentionally discriminating on the basis of race in employment contracts." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). Because Title VII and § 1981 discrimination claims "are subject to the same standards of proof and employ the same analytical framework," *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009), the court will analyze Ms. Farris's Title VII and § 1981 claims together.

A plaintiff may prevail on Title VII and § 1981 claims in several ways, including by presenting circumstantial evidence satisfying the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), or by demonstrating a "convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 & n.6 (11th Cir. 2019) (en banc). Ms. Farris contends that she can satisfy the *McDonnell Douglas* test using circumstantial evidence. (*See generally* doc. 42).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). A *prima facie* case ordinarily requires that the plaintiff applied for the job from which she was rejected, unless the plaintiff was not given the opportunity to apply, in which case the plaintiff must show "that the company had some reason or duty to consider [her] for the post." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133–34 (11th Cir. 1984).

If the plaintiff makes out a *prima facie* case, the "employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman*, 229 F.3d at 1024. If the defendant does so, the plaintiff must present evidence from which a jury could find that the proffered reasons were pretextual. *Id.* at 1024–25. Establishing that a reason is pretextual requires the plaintiff to show

"*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006). "The Supreme Court has said [a pretext analysis] merges with the ultimate summary judgment question." *McCreight v. AuburnBank*, 117 F.4th 1322, 1338 (11th Cir. 2024).

Below, the court considers RxBenefits's arguments in support of summary judgment as to Count Two, Count Three, then Counts One and Six together.

### 1. Account Manager Position Awarded to Tiffany Bruni in June 2021 (Count Two)

In Count Two, Ms. Farris alleges that RxBenefits racially discriminated against her by hiring Tiffany Bruni, a Caucasian, in June 2021 for the account manager position for which Ms. Farris had applied. (Doc. 12 ¶¶ 207–13; *see also id.* at 16 (entitling Count Two "June 2021 Account Manager Position – Awarded to Tiffany Bruni")).

RxBenefits moves for summary judgment on this count, in part, on the ground that Ms. Farris was unqualified for the job "because she was not located in the correct time zone." (Doc. 39 at 36). Ms. Farris does not dispute that she was not eligible for the position awarded to Ms. Bruni. (*Compare* doc. 39 at 12–13 ¶ 47, *with* doc. 42 at 11 ¶ 47). Despite Ms. Farris's clearly pleading that Count Two relates to the position awarded to Ms. Bruni, both parties treat the claim as relating to a different account manager position—the one awarded to Ms. Santoro around the same time. (*See* doc.

7

39 at 25, 32–36; doc. 42 at 34–40). But their incorrect understanding of the claim cannot overcome what Ms. Farris has clearly pleaded. (*See* doc. 12 at 16–25). Count Two centers on the position awarded to Ms. Bruni in June 2021 and fails to mention any job awarded to Ms. Santoro in March 2021. (*Id.* at 16; *id.* ¶¶ 133–222). And Ms. Farris has not moved to amend her complaint to assert a claim based on the position awarded to Ms. Santoro. *See Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [the Federal Rules of Civil Procedure].") (cleaned up).

Accordingly, the court **WILL GRANT** RxBenefits's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in its favor on this claim.

      2.    Manager of Quality Analysis Position Awarded to Angela Strang in July 2021 (Count Three)

In Count Three, Ms. Farris alleges that RxBenefits racially discriminated against her by hiring Ms. Strang in July 2021 as the manager of quality analysis. (Doc. 12 ¶¶ 305–11).

RxBenefits argues that Ms. Farris cannot prove her *prima facie* case under *McDonnell Douglas* because the manager of quality analysis role "was not posted and Ms. Farris did not apply." (Doc. 39 at 27). Ms. Farris agrees that the quality analysis manager position was not posted but contends that the Circuit has

8

recognized an exception to the application requirement of a plaintiff's *prima facie* case when the plaintiff was not given an opportunity to apply. (Doc. 42 at 25–26). "[A]n employee may be excused from the application requirement of a prima facie case as long as [s]he establishes that the company had some reason or duty to consider h[er] for the post." *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1276 (11th Cir. 2002) (quotation marks omitted).

It is undisputed that Ms. Farris would have applied for the manager of quality analysis position had it been posted. (Doc. 42 at 16 ¶ 3; doc. 45 at 2 ¶ 3). And the vice president of operations of RxBenefits, who had some input in hiring Ms. Strang and assigned her the duties of quality analysis manager, testified that she likely knew at the time that Ms. Farris had previously applied for manager of quality analysis. (Doc. 37-3 at 4–10). Thus, in the light most favorable to Ms. Farris, a reasonable juror could conclude that RxBenefits had a reason to consider Ms. Farris for quality analysis manager.

RxBenefits makes no other arguments regarding Ms. Farris's *prima facie* case. (*See* doc. 39 at 27–30). Instead, it asserts that it did not promote Ms. Farris because it merged the quality analysis manager position into a new combined role that Ms. Strang held. (Doc. 39 at 28). The burden thus shifts to Ms. Farris to prove that the proffered reason is pretextual by showing "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515.

Ms. Farris argues that the proffered reason is pretextual because another employee told her that quality analysis manager would be posted and not combined with another position. (Doc. 42 at 26). But she offers no evidence about whether that employee had actual knowledge of the intent to post the position. (*See id.*). And the undisputed evidence is that RxBenefits did combine several roles, including quality analysis manager, into one position held by Ms. Strang. (Doc. 37-3 at 6, 9–10; doc. 37-18 ¶¶ 8–10; *see* doc. 37-1 at 24). Moreover, it is undisputed that the position remained combined until mid-2024, and that a black employee held the position.[2] (*Compare* doc. 39 at 14–15 ¶ 56, *with* doc. 42 at 12 ¶ 56 (not disputing that the position remained combined until June 2024 or that it was held by L'Kisha Swanson, a black employee)). Accordingly, the court **WILL GRANT** RxBenefits's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on Count Three.

---

[2] The court does not consider the evidence of Ms. Strang's harassment of Ms. Farris in its pretext analysis for this claim because Ms. Strang was not Ms. Farris's supervisor when RxBenefits failed to consider Ms. Farris for quality analysis manager in the summer of 2021, and Ms. Farris testified that Ms. Strang could not have been involved in that decision. (*See* doc. 37-1 at 30–31).

### 3. Strategic Pharmacy Analyst Position Awarded to Bill Weir in June 2022 (Counts One and Six)

Finally, in Counts One and Six,[3] Ms. Farris alleges that RxBenefits racially discriminated against her by hiring Mr. Weir in June 2022 for the strategic pharmacy analyst position for which Ms. Farris had applied. (Doc. 12 ¶¶ 115–21, 647–53).

RxBenefits does not contend that Ms. Farris fails to make out a *prima facie* case for these claims, instead proffering its reason for its hiring decision: Mr. Weir was more qualified for the position. (*See* doc. 39 at 30–31). RxBenefits presents evidence that supports that reason and has therefore satisfied its "exceedingly light" burden. (*Compare* doc. 39 at 16 ¶ 63, *with* doc. 42 at 13 (not disputing that Ms. Farris had never worked as a financial analyst or strategic pharmacy analyst); doc. 34-17 at 9 (testifying that Mr. Weir had previously served as a financial analyst); doc. 37-1 at 18 (responding to whether Ms. Farris understood the duties of a strategic pharmacy analyst with "[y]es and no. I knew someone that was explaining to me what those roles are."); *id.* (agreeing that Ms. Farris did not ask many questions in her interview)). So the burden shifts to Ms. Farris to prove that the proffered reason is pretextual by showing "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515.

---

[3] Ms. Farris brings Count One under Title VII and Count Six under § 1981, but both claims relate to the denial of promotion to the same open position. (Doc. 12 at 3, 57).

Ms. Farris argues the reason provided is pretextual because the decisionmaker did not follow RxBenefits's interview procedures, the decisionmaker did not justify her decision by reference to any set metrics or criteria, and RxBenefits failed to prove Mr. Weir was more qualified. (Doc. 42 at 30–33). With respect to RxBenefits's interview practices, Ms. Farris offers no evidence to support that the interview training procedures were mandatory. (*See* doc. 42 at 15–23). Indeed, RxBenefits employees consistently testified that they were guidelines or tools that were not strictly followed (*see, e.g.*, doc. 37-4 at 15; doc. 37-7 at 12–13, 16; doc. 37-12 at 11; doc. 37-13 at 18–19).

With respect to the decisionmaker's failure to invoke set metrics or criteria, Ms. Farris points to no evidence that RxBenefits required that hiring be in accordance with any predetermined metrics or criteria. (*See* doc. 42 at 15–23). And with respect to Mr. Weir's qualifications, Ms. Farris does not dispute that he had significant experience as a lower-level financial analyst while she had none. (*Compare* doc. 39 at 17 ¶ 71, *with* doc. 42 at 13 ¶ 71 (not disputing that RxBenefits previously employed Mr. Weir as a financial analyst); *see also* doc. 34-17 at 9); *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000) (holding that "an employee attempt[ing] to prove pretext by showing she was substantially more qualified than the person promoted" requires evidence that the employee "was clearly more qualified for the position").

Ms. Farris also argues that Ms. Strang harassed her and attempted to meddle with Ms. Farris's applications for promotions. (Doc. 42 at 14–15 ¶¶ 84–89, 20 ¶ 25, 21 ¶ 4; *id.* at 40–41). But Ms. Farris presents no evidence that Ms. Strang discouraged the interviewer from recommending Ms. Farris to the decisionmaker. Rather, the evidence shows that Ms. Strang actually advocated for Ms. Farris's promotion to strategic pharmacy analyst. (Doc. 37-13 at 16).

Thus, Ms. Farris fails to sustain her burden of proof that RxBenefits's reasons for failing to promote her were pretextual, and she has not raised a jury question as to whether RxBenefits intentionally discriminated against her on the basis of race. *See McCreight*, 117 F.4th at 1338. Accordingly, the court **WILL GRANT** RxBenefits's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on Counts One and Six.

### III.   CONCLUSION

The court **WILL GRANT** RxBenefits's motion and **WILL ENTER SUMMARY JUDGMENT** in its favor on all claims. (Doc. 35).

The court will enter a separate final judgment consistent with this opinion.

**DONE** and **ORDERED** this September 10, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE